UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARMELO SILVA,                          :
          Plaintiff,                    :
                                        :
v.                                      :   Case No. 3:19-cv-01719 (VLB)
                                        :
RN VICKI KILHAM et al.,                 :
          Defendant.                    :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [ECF NO. 34]

On November 1, 2019, Plaintiff Carmelo Silva, an inmate in the custody of the Connecticut Department of Correction proceeding *pro se* and *in forma pauperis*, brought the instant complaint under 42 U.S.C. § 1983, alleging Eighth Amendment deliberate indifference claims against Registered Nurse ("RN") Vicki Kilham, RN Pamela Jasenec, Dr. Michael Clements, Correctional Captain Gregorio Robles, Warden Giuliana Mudano, and Dr. John Doe. [ECF No. 1 (Compl.)]. Upon initial review, the Court permitted Plaintiff's Eighth Amendment claims to proceed against Defendants RN Kilham, Dr. Clements, Dr. Doe,[1] Robles, and Warden Mudano in their individual capacities. [ECF No. 8].

---

[1] Dr. Doe has never been identified or served with the complaint. The Court's initial review order instructed Plaintiff to obtain information about Dr. Doe's name and work address through discovery and to file a notice containing this information with the Court. [ECF No. 8 at 13]. The Court further advised Plaintiff that failure to identify a Doe defendant "will result in the dismissal of all claims against that defendant." *Id.* at 14. As discovery is now complete but Dr. Doe is not identified or served, the Court will DISMISS Dr. Doe from this action. *See* Scheduling Order, [ECF No. 10]. *See Parkman v. O'Connor*, No. 3:18-cv-01358 (KAD), 2020 WL 4284485, at *4 (D. Conn. July 27, 2020) (noting it is a *pro se* plaintiff's obligation to prove a correct address for defendant and dismissing claims against defendant in his individual capacity without prejudice where Plaintiff failed to provide address to facilitate service on defendant).

On August 31, 2020, Defendants filed a motion for summary judgment on the basis of Silva's failure to exhaust his administrative remedies, the lack of merit of Plaintiff's Eighth Amendment claims, and Defendants' entitlement to qualified immunity. [ECF No. 34]. Defendants' motion for summary judgment includes a statement of facts, with evidentiary exhibits, in compliance with Local Rule 56(a)1. [ECF No. 34-2]. However, Silva has filed neither a response to Defendants' motion for summary judgment within the period for him to do so nor a motion for extension of time to file his response.[2]

Upon review, and absent objection, the Court will grant the motion for summary judgment because Plaintiff has not exhausted his administrative remedies and the record shows no Eighth Amendment deliberate indifference.

---

[2] Defendants provided Silva with a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him that judgment may be entered against him on his claims if he did not "file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure" and if Defendants' motion shows the defendants' entitlement to entry of judgment as a matter of law. [ECF No. 34-3]. He was informed that his opposition papers were due within 21 days of the date the motion was filed, that he could file a motion for extension of time if he needed more than 21 days to respond, and that he should review "very carefully" the copies of the attached rules. *Id.* After Silva filed a motion for extension of time, he was afforded until November 16, 2020 to file his opposition or response to the motion for summary judgment but has failed to so

## I.     MATERIAL FACTS

Defendants' Local Rule 56(a)1 Statement provides evidence showing the following facts relevant to his medical treatment that are undisputed.  Local Rule 56(a)1 Statement [ECF No. 34-2]; *see* Local Rule 56(a)3.[3]

On October 1, 2018, Plaintiff was transferred from Hartford Correctional Center to the Northern Correctional Institution ("Northern").   Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 1].   At that time, Plaintiff denied that he had any medical issues and did not voice any complaints.  *Id.* ¶ 2.  On that date, Plaintiff weighed 147 pounds.  *Id.*

Plaintiff submitted an inmate request form for sick call dated November 5, 2018, complaining that he was "using the bathroom and blood is coming out" and also complaining about stomach pains.  *Id.* ¶ 3; *see* Medical Record, ex. A [ECF No. 35 at 236].   Plaintiff was given a hemoccult kit, which is a home test used to detect blood in one's stool.  Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 5].  The

---

file.  [ECF Nos. 37, 38].

[3] **Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."   Thus, the Court may consider unopposed facts to be admitted if supported by evidence.**

tests came back positive and these were forwarded to a medical doctor for follow up on November 17, 2018.  *Id.* ¶ 6; *see* Medical Record, ex. A [ECF No. 35 at 232].

Dr. Clements first met with Plaintiff on January 22, 2019, and had his vital signs taken by RN Kilham.  Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 8]; Medical Record, ex. A [ECF No. 35 at 220-21]; Dr. Clements aff., ex. B [ECF No. 34-5 ¶ 6].  Plaintiff had not submitted any sick call requests or complained of any pain to anyone between November and when he met with Dr. Clements in January.  Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 9].  At that meeting, Plaintiff made no mention of any abdominal pain or diarrhea.  *Id.* ¶ 9.  Plaintiff also weighed 166 pounds at that appointment.  *Id.* ¶ 10.

On that date, Dr. Clements submitted a request for Plaintiff to be seen by a gastrointestinal ("GI") specialist.  *Id.* ¶ 12.  After submitting this request for Plaintiff to be seen by a specialist, Dr. Clements had no role in the scheduling of that appointment and had no ability to make that appointment at any particular time.  *Id.* ¶ 12.  Such requests are subject to the availability of the specialist, who does not typically work for the DOC.  *Id.* ¶ 13.

Dr. Clements also ordered Plaintiff to have erythrocyte sedimentation rate (ESR), a blood test that can reveal inflammatory activity in one's body and can help rule out inflammatory bowel disease.  *Id.* ¶¶ 14, 15.  The test was conducted on February 8, 2019.  *Id.* ¶ 16.  Dr. Clements reviewed the results on February 11, 2019, which came back within normal limits.  *Id.* ¶ 17.

4

Dr. Clements also prescribed Plaintiff ERGOCALCIFEROL (Vitamin D), for laboratory-diagnosed Vitamin D deficiency, which has shown to have anti-inflammatory and immune-modulating effects. *Id.* ¶¶ 18, 19. Plaintiff was prescribed to take one 50000 UNIT capsule twice weekly. *Id.* ¶ 22.

On March 5, 2019, Plaintiff was transferred to MacDougall-Walker Correctional Institution ("MacDougall-Walker"), where Dr. Clements did not treat any patients. *Id.* ¶ 23, 24. Plaintiff had "no pain or complaints" on March 5, 2019. *Id.* ¶ 25.

Plaintiff was seen by gastrointestinal specialist Gina Burns on April 3, 2019. *Id.* ¶ 27. On April 9, 2019, Dr. Naqvi ordered a number of tests for Plaintiff in order to detect if he had various GI disorders as a follow up to his gastrointestinal consult, including a stool culture, a clostridium difficile antigen (GDH) and toxin A/B, a rapid EIA, and a fecal leukocyte stain. *Id.* ¶ 30. The results returned on May 10, 2020 were unremarkable. *Id.* ¶¶ 32, 33; *see* Medical Record, ex. A [ECF No. 35 at 170-73].

Plaintiff returned to Northern on June 10, 2019. Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 26].

On June 11, 2019, Dr. Clements ordered that Mr. Silva have a complete blood count and auto differential as a follow-up for his diagnosis of possible inflammatory bowel disease, as well as an x-ray of his ribs (due to a reported injury). *Id.* ¶¶ 34, 35. The blood test was performed on June 14, 2019 and was

normal.  *Id.* ¶ 36.  The x-ray was performed on June 21, 2019 and revealed no displaced fractures of the right ribs and no pneumothorax or pleural effusion.  *Id.* ¶ 37.

Dr. Clements saw Plaintiff on June 18, 2019 for sick call.  *Id.* ¶ 38.  Dr. Clements explained to Plaintiff that he possibly had colitis, which is inflammation of the colon, but that, given his presentation, the appropriate thing was to await his colonoscopy.  *Id.* ¶ 39.  At the time of this visit, there was no indication for adding any medications.  *Id.* ¶ 40.

Plaintiff was hospitalized from August 29 to September 1, 2019 because on August 28, he had intentionally ingested several batteries.  *Id.* ¶ 41.  Plaintiff eventually passed all of the batteries by defecating, and he denied hematemesis (vomiting blood), melena (dark sticky feces containing partly digested blood), hematochezia (bright red bloody feces), or abdominal pain when meeting with doctors at John Dempsey Hospital.  *Id.* ¶ 42.

Plaintiff had a colonoscopy performed on October 1, 2019, at which time he had three polyps removed from his colon.  *Id.* ¶¶ 43, 44.  Plaintiff tolerated the procedure well; besides the three polyps, a random biopsy showed evidence of nonspecific colitis, which is inflammation of the colon.  *Id.* ¶ 45.

Colon polyps can often be completely harmless, although some can turn cancerous over time.  *Id.* ¶¶ 46, 47.  Polyps tend to be very slow-growing over a course of many months-to-years.  *Id.* ¶ 49.  Dr. Clements has not seen a

correlation between colon polyps and pain.  *Id.* ¶ 48.  Dr. Clements has provided a medical opinion that the timeframe of Plaintiff's initial consultation with Dr. Clements until when the colonoscopy was performed did not have an impact the ultimate outcome of the colonoscopy, and that to a reasonable degree of medical probability, Plaintiff received treatment consistent with the proper standard of care.  *Id.* ¶¶ 50, 52.

Dr. Clements met with Plaintiff on October 15, 2019, during which time Plaintiff explained to Dr. Clements that he was "feeling much better."  *Id.* ¶ 51.

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).  Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

III.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that Plaintiff has failed to exhaust his administrative remedies under either Administrative Directive 8.9 or 9.6.[4]

The Prison Litigation Reform Act of 1996 ("PRLA"), which governs actions brought by prison inmates, requires prisoners to exhaust their administrative remedies prior to filing a federal lawsuit regarding prison conditions.[5]  42 U.S.C. § 1997e(a).

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim is not exhausted until the inmate complies with all administrative deadlines and procedures.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement.  *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).  If the deadline to file a grievance

---

[4] "The Court can take judicial notice of the State of Connecticut Administrative Directives that are found on the Department of Correction's website." *Barfield v. Milling*, No. 3:14–cv–00914 (VAB), 2015 WL 1737671, at *3 n.1 (D. Conn. April 16, 2016).  *See https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Directives-and-Polices-Links.*

[5] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

has passed, an unexhausted claim is barred from federal court.  *See Woodford*, 548 U.S. at 95.

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books."  *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).  This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738).  The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.  "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements."  *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; a plaintiff must exhaust his administrative remedies prior to

filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-cv-00903 (SRU), 2019 WL 260356, at *3 (D. Conn. June 25, 2019).

A.      Claims Against Captain Robles and Warden Mudano

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1). A plaintiff with claims concerning custody staff's deliberate indifference to his health and safety in his conditions of confinement is generally obligated to exhaust his administrative remedies under Administrative Directive 9.6. *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (summary order) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6).

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(A). It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602) or an inmate must explain its absence.

11

The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached.  *See* A.D. 9.6(6)(C).  The Unit Administrator shall respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the Grievance.  *See* A.D. 9.6(6)(I).  The inmate may appeal the disposition of the Level 1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2.  *See* A.D. 9.6(6)(G), (I) & (K).  A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed.  *See* A.D. 9.6(6)(G).

A Level 2 Appeal of a disposition of a Level 1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 Grievance.  *See* A.D. 9.6(6)(K).  The Level 2 Appeal of the Unit Administrator's failure to dispose of the Level 1 Grievance in a timely manner must be filed within 65 days from the date the Level 1 Grievance was filed by the inmate.  *See* A.D. 9.6(6)(M).

Level 2 Appeals from inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator.  *See* A.D. 9.6(6)(K).  The District Administrator is required to respond to the Level 2 Appeal within thirty business days of receipt of the appeal.  *See id.*

12

Level 3 Appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 Appeals to which there has been an untimely response by the District Administrator.  *See* A.D. 9.6(6)(L).  A Level 3 Appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal.  *See id.*  A Level 3 Appeal of the District Administrator's failure to dispose of the Level 2 Appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal.  *See* A.D. 9.6(6)(M).  A Level 3 Appeal is reviewed by the Commissioner of Correction or his or her designee.  *See* A.D. 9.6(6)(L).

Defendants have submitted specific evidence as referenced in their Local Rule 56(a)(1) Statement of Facts to support their assertion that Plaintiff's Eighth Amendment claims have not been exhausted under all of the steps set forth under either Administrative Directive 8.9 or 9.6 prior to filing his complaint, as required by the PLRA.  As the United States Supreme Court explained in *Woodford*, 548 U.S. at 90 (citation and internal quotation marks omitted):

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

Plaintiff filed his Level 1 grievance (CN 9602) under Administrative

13

Directive 9.6(6) on October 24, 2019, concerning Northern staff failure or refusal to provide for medical treatment and the delay in receiving treatment at UCONN for his painful conditions.   Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 53; Grievance log/Grievance, ex. D [ECF No. 34-7].   However, Plaintiff did not receive a response to his Level 1 Grievance under Administrative Directive 9.6 until December 16, 2019, after he had already initiated this action on November 1, 2019. Grievance log/Grievance, ex. D [ECF No. 34-7 at 1-2].   Thus, Plaintiff failed to properly use all the steps for his administrative remedies available under Administrative Directive 9.6 so that his complaints as to custody staff could be addressed on the merits prior to filing his complaint in this action.   Furthermore, this evidence indicates that Plaintiff's remedies under Administrative 9.6 were not unavailable, and Plaintiff has not shown that he is excused from his PLRA exhaustion requirement under Administrative Directive 9.6 as set forth in *Ross.* *See* Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶¶ 53-59, 61, 62]; Grievance log/Grievance, ex. D [ECF No. 34-7]; Robles aff., ex. E [ECF No. 34-8 ¶ 6]; Mudano aff, ex. F [ECF No. 34-9 ¶¶ 6, 7].

Accordingly, the Court may grant the motion for summary judgment for lack of exhaustion on his claims against custody staff under the PLRA.   Thus, the Court need not address Defendants' other arguments concerning the specific merits of Silva's claims against Correctional Captain Robles and Warden Giuliana Mudano, or their entitlement to qualified immunity.   *See, e.g., Vidro v. Erfe,* No.

14

18-cv-00567 (CSH), 2019 WL 4738896, at *9 (D. Conn. Sept. 26, 2019) (noting merits of plaintiff's claim were "not reached" because court had already granted summary judgment for defendants on basis of plaintiff's failure to exhaust administrative remedies available to him).

**B.      Claims against RN Kilham and Dr. Clements**

DOC Administrative Directive 8.9 governs the administrative remedies for health services.   It provides for two types of Health Services Review: (1) Diagnosis and treatment, which includes a decision not to provide treatment; and (2) Review of an Administrative Issue, which addresses concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider."  A.D. 8.9(9).

Pursuant to Section 10 of Directive 8.9, both types of Health Services Reviews require an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form."  A.D. 8.9(10).  A response to the inmate shall be made within fifteen days of the written request.  *Id.*

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful."  A.D. 8.9 (11).  The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box.  *Id.*  Upon receipt

15

of CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider.  A.D. 8.9 (11)(A).  If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the Health Services Review.  A.D. 8.9 (11)(A).  The physician shall notify the inmate of the decision, in writing, within ten business days by indicating "No Further Action" in the disposition field.  *Id.* "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the Utilization Review Committee for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]"  A.D. 8.9 (11)(B).

An inmate may request review of an Administrative Issue by checking the box marked "All Other Health Care Issues" on the Health Services Review form (CN 9602); the inmate must provide a concise statement of what the inmate believes to be wrong and how the inmate has been affected, and the inmate must deposit the form in the Health Services box.  A.D. 8.9 (12).  This request for review shall be evaluated by a Health Services Review Coordinator within thirty days.  A.D. 8.9 (12)(A).  If the inmate is dissatisfied with the response, the inmate may appeal the decision within ten business days.  A.D. 8.9 (12)(B).  The appeal is decided and responded to by the designated facility health services director or designee within fifteen days.   A.D. 8.9 (12)(C).   For all issues relating to compliance with existing standards, this review is final, and the inmate shall have

exhausted the requisite Health Services Review process. *Id.* If the matter
"relates to a health service policy of the Department, the inmate may appeal to
the DOC Director of Health Services" within ten business days from the receipt of
the response. A.D. 8.9 (12)(D). The Director has thirty days to respond. A.D. 8.9
(12)(E). Upon receipt of this decision, the inmate shall have exhausted the Health
Services Review for an Administrative Issue. *Id.*

Plaintiff has alleged that RN Kilham threw away his inmate requests for
medical attention in 2018, and that in February 2019 she told him that she threw
away his medical grievances. Compl. [ECF No. 1 ¶¶ 21, 44]. Defendants have
provided evidence that Plaintiff filed an inmate request form for sick call dated
November 5, 2018, complaining about stomach pain and having blood "come out"
while using the bathroom. Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶ 3]; *see*
Medical Record, ex. A [ECF No. 35 at 236]. Further, Defendants have submitted
evidence that Health Services Review Coordinator RN Kilham conducted a review
of the grievance logs for Health Services Reviews filed between September 1,
2018 to January 14, 2020, and that she also ran a search in the Health Services
Reviews database at Northern for any Health Services Reviews from Plaintiff;
these searches demonstrated that Plaintiff did not file any Health Services
Reviews between September 1, 2018 and January 14, 2020. Defs.' Local Rule
56(a)1 Stmt. [ECF No. 34-2 ¶ 57]; Kilham aff, ex. C [ECF No. 34-6 ¶¶ 5, 6]. RN

Kilham has provided a sworn declaration that she did not throw out any of his medical grievances.  Kilham aff, ex. C [ECF No. 34-6 ¶ 8].

The fact that Plaintiff was able to file an administrative remedy form (CN 9602) on October 24, 2018 shows that his administrative remedies were not unavailable to him so as to excuse his exhaustion requirement as contemplated by *Ross.*  He was not precluded by Administrative Directive 8.9 from filing another form CN 9602 for a Health Services Review to complain about his medical treatment or RN Kilham's conduct prior filing this action on November 1, 2019. *See Waters v. Blumberg*, No. 3:19-cv-00812 (CSH), 2020 WL 3451853, at *13 (D. Conn. June 24, 2020) (Administrative Directive 8.9 "does not contain a statute of limitations for the initial filing of a Review of a Diagnosis or Treatment."); *Carter v. Revine*, No. 14-cv-01553 (VLB), 2017 WL 2111594, at *15 (D. Conn. May 15, 2017) (noting the "stark contrast" between Directive 9.6, which imposes a thirty-day statute of limitations on the grievance process, and Directive 8.9, which "contains no statute of limitations for the initial filing of a Review of an Administrative Issue").  Thus, the record reflects that Plaintiff's administrative remedies were available, but he failed to take the steps necessary to exhaust his administrative remedies under Administrative Directive 8.9.

Even if the record could be construed as raising a question of fact as to whether Plaintiff's administrative remedies were unavailable under Administrative Directive 8.9, the Court concludes that entry of summary judgment is still

18

appropriate on Plaintiff's Eighth Amendment claims against RN Kilham and Dr. Clements.

IV.    EIGHTH AMENDMENT MEDICAL DELIBERATE INDIFFERENCE

Plaintiff alleges that Defendants acted with deliberate indifference to his pain and suffering and medical needs.  Compl. [ECF No. 1 ¶¶ 64-74].  Plaintiff alleges that Defendants Kilham and Dr. Clements ignored his need for timely treatment.  *Id.* ¶¶ 21, 44, 51, 35, 36, 52.  Plaintiff alleges that he first complained to RN Kilham about "stomach pains" and "bloody stool" "several days" after October 25, 2018, had a "hemoccult kit" test that showed blood in his stool on November 2018, and met with Dr. Clements on November 20, 2018.  *Id.* ¶ 20-21, 32, 39.  He alleges that he underwent a colonoscopy and had "several polyps" removed on October 1, 2019.  *Id.* ¶ 56.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment."  *Id.* at 104 (internal quotation marks and citation omitted). The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.* at 104-05.

19

To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must satisfy both objective and subjective elements. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation "must be, in objective terms, sufficiently serious." *Id.* (quotations and citations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.*

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the second subjective prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."). *See also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

"In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 280) (other citations omitted) (summary order). The court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*; *see also Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012) ("Even assuming that Bilal's conditions could produce serious complications if neglected over sufficient time, there is no evidence that Bilal's conditions worsened over the

hours of delay here[.]") (internal citation omitted); *see also Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

Relevant to the subjective component of the Eighth Amendment analysis, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin,* 467 F.3d at 280; *Amaker v. Coombe,* No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate a prisoner's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.").

Here, the evidence reflects that Plaintiff's medical condition was not ignored and that he did receive treatment. Defendants' evidence supports their assertion that the severity of the temporary deprivation alleged by the Plaintiff was not objectively serious. The record fails to show that the delay in treatment caused Plaintiff's conditions—polyps and nonspecific colitis—to worsen. *See* Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶¶ 50, 51, 52]; *See Young-Flynn v.*

*Wright*, No. 05 CIV.1488 LAK, 2007 WL 241332, at *18 (S.D.N.Y. Jan. 26, 2007) (finding that "colon condition" involving rectal bleeding and polyps did not present a "condition of urgency," noting plaintiff had not been diagnosed with cancer, and dismissing plaintiff's complaint based in part on his failure to allege any injury caused by the supposed failure to address the rectal bleeding).  Dr. Clements has explained that polyps tend to grow very slowly over a course of many months to years.  Dr. Clements aff., ex B, [ECF No. 34-5 ¶ 19].  Plaintiff has not refuted this evidence.

Moreover, Dr. Clements has explained that he has not seen any correlation between colon polyps and pain.  Dr. Clements aff., ex B, [ECF No. 34-5 ¶ 16].  The record shows no complaints of pain to Dr. Clements or to when he was transferred to MacDougall-Walker.  Defs.' Local Rule 56(a)1 Stmt. [ECF No. 34-2 ¶¶ 9, 25].  On August 30, 2019, Plaintiff denied having stomach pain even after he voluntarily ingested batteries.  *See* Medical Record, ex. A [ECF No. 35 at 113].

Accordingly, upon review of the record and absent objection from the Plaintiff, the Court concludes that entry of summary judgment in Defendants' favor is appropriate.

### III. CONCLUSION

For the foregoing reasons, the motion for summary judgment, [ECF No. 34], is GRANTED upon review of the record and absent objection.  The clerk is instructed to entered judgment in Defendants' favor and to close this case.

23

_____/s/_____
**Vanessa L. Bryant**
**United States District Judge**

**SO ORDERED at Hartford, Connecticut this 16th day of December 2020.**